IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KING ADE OLOWU            :
                          :          CIVIL ACTION
        v.                :
                          :          NO.  05-2085
JUDITH L. SCHWANK, et al.  :

## ORDER–MEMORANDUM

**Padova, J.**

**AND NOW**, this 23rd day of August, 2005, upon consideration of Defendant Marybeth Jackson's Motion to Dismiss (Doc. No. 26), Defendant Jesse Kirsch's Motion to Dismiss (Doc. No. 29), Defendants Judith Schwank, Mark Scott, Thomas Gahewski, Sr., George Wagner, and the Prison Board's Motion to Dismiss (Doc. No. 31), and all filings submitted in response thereto, **IT IS HEREBY ORDERED** that said Motions are **GRANTED** and this case is **DISMISSED** in its entirety.  The Clerk of Court shall **CLOSE** this case for statistical purposes.

Plaintiff, who is in the custody of the Immigration and Naturalization Service ("INS"), has been detained at Berks County Prison in Leesport, Pennsylvania since July 7, 2003. (Compl. at 2-4.)  On June 2, 2004, Plaintiff fell from his bed while sleeping and experienced severe pain in his right shoulder.  (Id. at 4.)  That morning, Plaintiff slipped in the bathroom and again fell on his already injured right shoulder. (Id.)  Plaintiff placed a sick call, and was seen by the staff medical nurse. (Id.)  Upon examining Plaintiff, the nurse proscribed him Motrin twice a day. (Id.)  Plaintiff continued to experience severe pain even after

having taken the pills, and repeatedly sought to be re-examined by the medical department.  (Id.)

In late June, Plaintiff was seen by Defendant Jesse Kirsch, a physician assistant, who gave Plaintiff a physical exam.  (Id.) Defendant Kirsch concluded that there was no indication of severe injury, and prescribed Plaintiff four different pills, including Naprosyn, which were to be taken twice a day.  (Id.)  Plaintiff had a severe negative reaction to these pills, causing him to suffer from depression, irregular heart rates, blurry vision, and indigestion problems.  (Id. at 4-5.)  Based on these symptoms, Plaintiff placed several new sick calls, and was re-examined by Defendant Kirsch on July 9, 2004.  (Id. at 5.)  Upon hearing of Plaintiff's negative reaction to the prescribed medications, Defendant Kirsch immediately gave Plaintiff some unidentified medicine and prescribed other medicines for Plaintiff which were to be taken regularly.  (Id.)

Plaintiff continued to experience pain and sleeplessness after his second visit with Defendant Kirsch.  (Id.)  Plaintiff wrote a letter to the medical department on July 19, 2004, seeking an x-ray examination of his shoulder.  (Id.)  The medical department responded that Plaintiff had just been seen, and that he would have to allow the medicine some time before being re-examined.  (Id.) On July 22, 2004, Plaintiff again wrote to the medical department, and was once more denied further medical care.  (Id.)  Plaintiff wrote several additional letters to the medical department

2

throughout the month of August.  (<u>Id.</u> at 6.)

On November 4, 2004, Plaintiff's right shoulder was x-rayed. (<u>Id.</u> at 6.)  On November 11, 2004, Defendant Dr. Marybeth Jackson performed a full physical exam on Plaintiff, and concluded that Plaintiff's injury should be examined by an outside physician as soon as the INS authorized such exam.  (<u>Id.</u>)  Petitioner wrote a letter to the District's INS Office Supervisor, but received no response.  (<u>Id.</u>)  On December 20, 2004, Plaintiff placed another sick call as a follow-up on Dr. Jackson's recommendation that an outside physical examination be performed.  (<u>Id.</u>)  In response, prison officials indicated that a request had been sent to the INS for authorization.  (<u>Id.</u>)

Plaintiff next wrote a grievance report to Defendant George Wagner, the Warden of Berks County Prison.  (<u>Id.</u>)  Defendant Wagner responded to Plaintiff's grievance report, and indicated that the prison officials were currently awaiting approval from the INS to conduct further testing and would schedule treatment for Plaintiff as soon as such approval was received.  (<u>Id.</u>)  Plaintiff has since been examined, but continues to take Naprosyn even though a December 29, 2004 article from the <u>Readers</u> <u>Eagle</u> newspaper indicated a link between the usage of this painkiller and the occurrence of heart attacks and strokes.  (<u>Id.</u> at 6-7.)

When determining a Motion to Dismiss pursuant to Rule 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments.  <u>Jordan v. Fox, Rothschild, O'Brien</u>

& Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the Plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A court, however, need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted).  A Rule 12(b)(6) motion will be granted when a Plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

Plaintiff has brought this *pro se* Section 1983 action against Defendants for a violation of his constitutional right to adequate medical care.  Section 1983 provides a remedy against "any person" who, under the color of the law, deprives another of his constitutional rights.  42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must set forth: (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law.[1]  Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997).

Plaintiff, who at all relevant times was an INS detainee, alleges that Defendants violated his right to adequate medical care under the Fourteenth Amendment.  The Court notes that, although the

---

[1] It is undisputed that the Complaint adequately alleges that the Defendants acted under the color of state law.

Complaint clearly indicates that Plaintiff has brought this action under the Fourteenth Amendment, Defendants have analyzed Plaintiff's claim under the Eighth Amendment's prohibition of cruel and unusual punishment.  However, "Eighth Amendment scrutiny is appropriate only after . . . [conviction, because] the State does not acquire the power to punish with which the Eight Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."  Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977).  Pre-trial detainees, for whom no adjudication of guilt has taken place yet, derive their right to medical care from the Fourteenth Amendment.  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  "The term pre-trial detainee also includes those in custody awaiting hearing or deportation by the Immigration or Naturalization Service."  Okocci v. Klein, 270 F. Supp. 2d 603, 610 n.3 (E.D. Pa. 2003).

The Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care" to pre-trial detainees.  City of Revere, 463 U.S. at 244.  "In evaluating the constitutionality of conditions . . . of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee."  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  It is well-established that "the due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted

5

prisoner." Id. Accordingly, "the Eight Amendment [i]s relevant to conditions of pre-trial detainees only because it establishes a floor." Hubbard v. Taylor, 399 F.3d 150, 165-66 (3d Cir. 2005). Nonetheless, courts addressing pre-trial detainees' claims of inadequate medical treatment have looked to the Eight Amendment's standard for cruel and unusual punishment. See Hubbard, 399 F.3d at 166; see also Lassiter v. Buskirk, Civ. A. No. 03-5511, 2005 WL 1006313, at *4 (E.D. Pa. Apr. 28 2005). Accordingly, even though Defendants' Motions address only the Eight Amendment's standard for claims of cruel and unusual punishment, the Court will construe Defendants' Motions as seeking dismissal of Plaintiff's Fourteenth Amendment claims.

To state a valid claim for unconstitutional punishment by deprivation of medical care under the Fourteenth Amendment, a plaintiff must allege (1) a serious medical need; and (2) acts or omissions by the prison officials that indicate deliberate indifference to that need. Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A medical need is serious if it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). The seriousness prong is also met if the effect of denying or delaying care results in the wanton infliction of pain or a life-long handicap or

permanent loss.  Id.  Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law."  Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)(en banc)).  The United States Court of Appeals for the Third Circuit has found deliberate indifference "in situations where 'necessary medical treatment is delayed for non-medical reasons'" or the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  Natale, 318 F.3d at 582 (quoting Lanzaro, 834 F.2d at 347).

Defendants argue that the Complaint should be dismissed because Plaintiff received adequate medical treatment while housed at Berks County Prison and, therefore, cannot establish that his constitutional right to adequate medical care was violated. "'Where a[n] [inmate] has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law.'"  United States ex rel. Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Accordingly, "physicians' decisions not to perform particular tests or diagnostic measures on a[n] [inmate] will not support a § 1983 claim."  Thomas v. Zinkel, 155 F. Supp. 2d 408, 411 (E.D. Pa. 2001).

Here, Plaintiff alleges that he received insufficient and improper care for his shoulder injury.  Specifically, the Complaint

7

alleges that Plaintiff was denied outside treatment, was not seen frequently enough by the prison's medical staff, was prescribed an improper pain medication, and was not x-rayed in a timely manner. A prison official's refusal to follow a recommendation from its medical staff for outside treatment and decision to instead provide an inmate with x-rays and painkillers does not establish deliberate indifference. Santiago v. Guarini, Civ. A. No. 03-4375, 2004 WL 1535775, at *2 (E.D. Pa. July 8, 2004) (dismissing complaint where inmate slipped in cell, nurse informed prison officials that he needed immediate outside medical treatment, and plaintiff instead was x-rayed, given Motrin, and placed in a half-cast); see also Despaigne v. Crolew, 89 F. Supp. 2d 582, 585 (E.D. Pa. 2000) (granting summary judgment to defendants where inmate suffered "swelling and bruising" from altercation and was treated with pain medication); Farley v. Doe, 840 F. Supp. 356, 357 (E.D. Pa. 1993) (dismissing claim as frivolous where inmate injured back in basketball game and was treated with x-rays and pain medication). Indeed, such allegations sound in state tort law rather than constitutional law, and give rise to negligence claims for medical malpractice. Santiago, 2004 WL 1535775, at *2.

Here, the Complaint's allegations similarly challenge the adequacy of the treatment received by Plaintiff, and can thus state only a medical malpractice claim. See United States ex rel. Walker, 599 F.2d at 575 n.2. It is the "well-established law in this and virtually every circuit that actions characterizable as

medical malpractice do not rise to the level of 'deliberate indifference.'" <u>Parham v. Johnson</u>, 126 F.3d 454, 458 n.7 (3d Cir. 1997).   As Defendants here were, therefore, not deliberately indifferent to a serious medical need, the Court concludes that the conditions of Plaintiff's confinement did not amount to punishment. <u>Bell</u>, 441 U.S. at 535 (1979).   Accordingly, the Complaint's allegations do not give rise to a valid claim for inadequate medical care under the Fourteenth Amendment, and Defendants' Motions to Dismiss are granted.

BY THE COURT:

/s/ John R. Padova

_____John R. Padova, J.